[New York, Chicago & St. Louis Rwy. Co. *v.* Price, Administrator.]

other evidence to be given we do not know, but, of course, if this fact is excluded, other evidence would be of no avail. We decide nothing more than that the offered proof was competent testimony. The final effect of the whole testimony is not before us, and cannot be now decided. The judgment is reversed on these first and second assignments.

Judgment reversed and *venire de novo* awarded.

## ERIE COUNTY.

July Term, 1883, No. 126.     February 6, 1884.

# New York, Chicago & St. Louis Railway Co. *v.* Price.

1. Upon an appeal from the award of viewers, appointed under the act of 19 February, 1849, sec. 11, P. L., 79, supplemented by the act of 9 April, 1856, P. L., 288, to assess damages for land taken or occupied by a railroad company, it is error to refuse an offer on the part of the railroad company to prove that the owner of the land removed and appropriated to his own use the barns, sheds, and materials, which were upon the right of way, as an element in the consideration of damages by the jury.

2. There is no legal obligation on the part of the court to make an order directing the jury to go upon the premises and view the same, upon the mere application of one party and against the objection of the other.

3. If a view is desirable, it can generally be had by means of a struck jury, under the rules of practice which relate to that subject.

4. In these cases, it is more conformable to correct practice to have an issue regularly made up between the parties, and there is no objection to making the land-owner plaintiff.

5. The Court having ordered the railroad company defendant to plead without a narr being filed, *held*, that the court of common pleas has entire control over the pleadings and mode of trial in such cases arising within its jurisdiction.

Before Mercur, C. J.; Gordon, Paxson, Trunkey, Sterrett, Green, and Clark, JJ.

Error to the Court of Common Pleas of *Erie County*.

Appeal of G. T. Elliott from the award of viewers assessing damages in his favor and against the New York, Chicago and St. Louis Railway Company for $7,000. The Court ordered that an issue be formed making G. T. Elliott plaintiff and the New York, Chicago and St. Louis Railway Company defendant, and that defendant be re-

quired to plead as if a narr had been filed. (Eighth assignment of error.)

Defendant pleaded, under protest, "not guilty."

G. T. Price, administrator of G. T. Elliott, deceased, was afterwards substituted as plaintiff.

On the trial in the court below, before BROWN, J., the following facts appeared :

G. T. Elliott owned a farm of about 101 acres of land in Harbor Creek township, Erie county, located about eight miles east of Erie city. Upon this farm there were two sets of buildings, consisting of thirteen barns, sheds, and out-buildings, and two dwelling-houses, all of which were in good condition for farming purposes. The northern part of the farm fronts on a public road called the Buffalo road, and extends along it for a distance of 2,000 feet. Parallel with this road, and about 200 feet south of it, the Lake Shore and Michigan Southern railroad is located through the said farm and occupies 2 acres 119 perches of land. On the south of this railroad, and within 15 feet of its right of way, stands the dwelling of G. T. Elliott, and to the eastward, another dwelling-house 78 feet from said railroad. Between the Buffalo road and the said railroad, there are 4⅕ acres.

The defendant, the New York, Chicago and St. Louis Railway Company, was incorporated under the general railroad law of Pennsylvania. In May, 1881, the defendant company surveyed and located the right of way for its road through and over plaintiff's farm, and on October 12, 1881, filed its bond for $12,000 to secure plaintiff for the damage done by reason of the location of the road. The defendant company then took possession of the right of way, constructed its railroad thereon, and shortly thereafter began to operate it. The right of way of this railroad is located 93 feet south of Elliott's dwelling, and extends through the entire farm, east and west, occupying 2 acres 123 perches. Between the rights of way of the two railroads are the two houses and 6 acres 118 perches of land, leaving about 86 acres south of the road of defendant company.

A number of witnesses testified as to the character of the injury done to the land and the buildings, and the amount of the damages.

Defendant's counsel asked witness, John Love, the following question : "By whom were the barns and the sheds upon the right of way taken off the right of way ?" Objected to.

The COURT. "There being no evidence upon this ques-

[New York, Chicago & St. Louis Rwy. Co. *v.* Price, Administrator.]

tion on the part of the plaintiff, the objection is sustained and the testimony rejected." Exception. (First, second, and third assignments of error.)

Defendant's counsel then asked the further question: "What, if any, of the buildings or material on the right of way did G. T. Elliott, or his employés, remove from the right of way of said railroad through his farm?" Objection by plaintiff's counsel sustained. Exception. (Fourth and fifth assignments of error.)

Defendant's counsel then asked the further question: "Did the New York, Chicago and St. Louis Railway Company, to your knowledge, remove, or cause to be removed, from the right of way, any of the barns on the same, and appropriate to its use the material in the same?" Objection by plaintiff's counsel sustained. Exception. (Sixth assignment of error.)

Before the trial began, the defendant's counsel asked the Court to direct the jury to go upon the premises and view the same, and the Court refused to so order. (Seventh assignment of error.)

May 5, 1883, verdict for plaintiff for $10,386 66, upon which judgment was afterwards entered.

Defendant then took out a writ of error, assigning the eight errors as above.

*Davenport & Griffith* for plaintiff in error.

The act of 9 April, 1856, P. L., 288, does not, in words, expressly provide that the plaintiff shall declare in all cases, but in the present case there should be something to inform the defendant as to the claim, so as to enable the defendant to plead. Here the defendant filed the petition and was required to plead to it, thus making the pleading one-sided. In R. R. Co. *v.* Lazarus, 4 Casey, 203, the land-owner filed the petition, which was treated as a narr.

The act of 1849 required the viewers to view the premises, &c. An appeal being allowed by the act of 1856, the same necessity exists for the jury to view the premises, the court being given the power to make "all such orders connected with the same as may be deemed requisite."

The offer to prove that the land-owner appropriated the barns, sheds, &c., upon the right of way was admissible, because the damages were thereby materially lessened.

*Benson & Brainerd* for defendant in error.

[New York, Chicago & St. Louis Rwy. Co. v. Price, Administrator.]

The court has express authority, under the act of Assembly, to direct the form of the issue. No declaration is necessary: R. R. Co. v. Lazarus, 4 Casey, 203.

The change effected by reason of the location and construction of the road was such that the jury could form no estimate of the damage from a view. It would only have tended to mislead and confuse the jury. The application was too late, having been made when the case was called for trial: 79 Penna., 71. The court should not order a view in such case, except by consent or agreement of the parties.

When a railroad company takes private property for railroad purposes, the title to that property passes to the railroad company upon the filing and approval of the bond for the payment of damages to the land-owner. It follows, therefore, that the title to all the buildings, &c., upon the land passes with it and belongs to the company. The land-owner has no right or power to interfere. If he did remove any of the materials from the right of way, he committed a trespass, and damages for such tresspass cannot be tried in an action of this kind, neither in the way of set-off nor as a defense.

February 18, 1884, the opinion of the Court was delivered by GREEN, J.:

We are clearly of opinion that the defendants' offers of testimony in relation to the removal of the buildings on the plaintiff's land should have been received. The removal of the buildings was certainly an element of damage to be considered by the jury. If they were taken by the company, the land would be worth less than if they were left upon the premises. If the plaintiff took them, his damage would not be so great as if the company took them. It would be for the jury to consider all the circumstances in this connection, in order to determine intelligently what amount of injury was sustained by the plaintiff in consequence of what was done with the buildings, whether by the plaintiff or the defendant. They should know all the facts relating to the subject. The first six assignments, all of which relate to this matter, are sustained. The seventh is not sustained. The Court was not bound to direct the jury to go upon the premises. Such an order is often made, and, as a general rule, it is desirable that the jury should visit the premises, but there is no legal obligation on the part of the Court to make the order upon the mere application of one party and against the objection of the other. If

[Skinner *v.* Kroh.]

a view is desired, it can generally be had by means of a struck jury, under the rules of practice which relate to that subject.

In regard to the pleadings in such cases as this, the practice in some counties is to regulate them by rules of court. It is certainly more conformable to correct practice to have an issue regularly made up between the parties, and we see no objection to making the land-owner plaintiff. It does not seem that there is any rule of court in Erie county on the subject, at least none is referred to by counsel on either side. The act leaves the whole matter to the court, and we can hardly say there was error because the Court ordered the company to plead without a declaration. Such may be the practice in Erie county, and as the court of common pleas of that county has entire control over the mode of trial in such cases arising within its jurisdiction, the subject must be left to their direction.

Judgment reversed and new *venire* awarded.